IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

———————————————————————— X

CIMATRON TECHNOLOGIES, INC. and
CIMATRON LTD.,

                     Plaintiffs,

      -against-

STAMOD SOLUTIONS, INC., ALCOR FUND
INC., and GEORGE MOLAKAL,

                    Defendants.

———————————————————————— X

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 26-cv-6265

**COMPLAINT**

Plaintiffs Cimatron Technologies, Inc. and Cimatron Ltd. (collectively, "Cimatron" or "Plaintiff"), as and for their Complaint herein against defendants STAMOD Solutions, Inc. ("STAMOD"), Alcor Fund Inc. d/b/a Alcor Fund ("Alcor") and George Molakal ("Molakal", and together with STAMOD and Alcor, "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      In this action, Cimatron seeks damages arising out of Defendants' wrongful use and copyright infringement of Cimatron's proprietary suite of Computer Aided Design and Manufacturing software and related modules ("CAD/CAM") known as *Cimatron*, along with related updates, documentation and associated intellectual property rights (collectively, the "Software").

2.      In particular, STAMOD and Alcor, directly and with each other's knowledge, participation and support, have wrongfully been using versions of the Software without any applicable license, authorization or other legal right to do so.  Further, STAMOD and Alcor have being doing so with the knowledge, at the direction and control, and for the financial benefit, of Molakal.  Accordingly, Defendants are liable to Cimatron for the fair market value of licensed

versions of the Software, in an amount of at least $5,520,000, plus interest, costs and attorneys' fees as allowable by law.

## THE PARTIES, JURISDICTION AND VENUE

3.     Cimatron Technologies, Inc. is a corporation organized under the laws of Michigan, with its principal place of business at 41700 Gardenbrook Road, Suite 100, Novi, Michigan 48375.

4.     Cimatron Ltd. is an entity organized under the laws of Israel with its principal place of business located at 9 Hapsagot Street, Ofer Park, C Building, Petah-Tikva, 4951041, Israel.

5.     Collectively, Cimatron produces the Software for manufacturing, toolmaking and computer numerical control programming applications.

6.     Upon information and belief, defendant STAMOD is a corporation organized under the laws of Illinois, with its principal place of business at 444 West Lake Street, Floor 17, Chicago, IL 60661. Upon information and belief, STAMOD provides product design and manufacturing services, including for progressive dies, injection molds, fixtures and tool repair in the United States and India.

7.      Upon information and belief, defendant Alcor is a corporation organized under the laws of Illinois, with its principal place of business and "global headquarters" at 444 West Lake Street, Floor 17, Chicago, IL 60661 (https://alcorfund.com/#contact). Upon information and belief, Alcor is a global investment firm that owns and controls STAMOD.

8.     Upon information and belief, Molakal is a citizen of the State of Illinois, with a residence at 37 Ashburn Court, Schaumburg, IL 60193, and with an office address at 444 West Lake Street, Floor 17, Chicago, IL 60661.  Upon information and belief, Molakal is the Chief Executive Officer of Alcor and an Officer, Director and/or Principal of STAMOD.

9.     This action, in part, arises under 17 U.S.C. §101, et seq. for infringement of copyright rights owned by Cimatron.

- 2 -

4917-1602-1423, v.1

10. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 106, 501 and 504, as well as 28 U.S.C. §§ 1331, 1332(a) and 1338(a).

11. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

12. This Court has personal jurisdiction and venue over Defendants because they are all citizens of the State of Illinois, and all reside and regularly conduct business in this District, and, upon information and belief, engaged in the wrongful conduct alleged herein in this District.

**FACTS COMMON TO ALL CLAIMS**

13. Cimatron is the owner of the Software, which provides an end-to-end solution for designing and manufacturing tools.

14. Cimatron has numerous registered copyrights for its Software, including U.S. Copyright Registration No. TX 9-397-052 titled "Cimatron 2024" published on June 29, 2023 and registered on June 4, 2024 (the "Copyright Registration"; *see* Exhibit A hereto). The Copyright Registration evidences Cimatron's ownership of the copyright in the Software.

15. STAMOD and Alcor have knowingly, repeatedly, illegally and willfully been using at least 24 "pirated" or "cracked" versions of the Software since at least as early as 2023.

16. By way of background, STAMOD initially obtained a legal license to use certain authorized versions of limited modules of the Software (as opposed to the "full suite" of the Software) pursuant to an End User License Agreement between the parties in December of 2023 (the "Agreement"; *see* Exhibit B hereto). However, that license, pursuant to the Agreement, is expressly limited and conditioned on STAMOD's full compliance with the Agreement. Further, the Agreement does not permit the use of pirated, cracked, or otherwise unauthorized and unlicensed versions of the Software.

4917-1602-1423, v.1

17. Nevertheless, the evidence demonstrates that both STAMOD and Alcor have knowingly acquired from illicit and unauthorized third-party sources and installed, accessed, copied and/or used at least 24 unlicensed and unauthorized versions of the "full suite" of the Software.

18. In particular, Cimatron attempts to prevent unauthorized use of the Software through a "Security Mechanism", which requires customers to have a valid license to access the Software by denying access unless the user has a license "key" and/or by using other verification technology.

19. However, to illegally use or sell the Software, "hackers" reverse engineer the "Security Mechanism" and then provide processes and utilities to bypass the Security Mechanism. These processes and utilities mimic the license verification technology such that the pirated software can function as if it were properly licensed Software. These pirated software programs that mimic properly licensed programs are referred to as "cracked" licenses. The illegally obtained Software and the cracked copies are uploaded to a website, and can then be downloaded by end-users without payment of the appropriate software license and other fees that would be charged by the legitimate owner of the software had the software not been "cracked".

20. Cimatron uses piracy detection and reporting security software to allow it to track who is using the Software and identify piracy (the "Tracker"). The Tracker not only identifies illegal access to the Software, but it also provides the identity and physical location of organizations using the pirated Software, among other identifying information. Cimatron embeds the Tracking device within its Software. Using the Tracker, which essentially "phones home" to Cimatron, Cimatron has determined that Defendants are using numerous pirated or cracked versions of the Software.

4917-1602-1423, v.1

21. Indeed, by using the Tracker, Cimatron has irrefutable time-stamped data and location-stamped data demonstrating that both STAMOD and Alcor have been using at least 24 cracked or pirated versions of the Software on at least 20 computers from within STAMOD's and/or Alcor's business premises, on computers associated with STAMOD and Alcor email addresses, since at least as early as 2023.

22. Defendants are well aware of these illegal uses, but instead of ceasing this wrongful conduct have fabricated excuses to attempt to escape the consequences of their unlawful conduct.

23. For example, by letter dated April 22, 2024, Cimatron correctly accused STAMOD of repeatedly using unlicensed Software. By return email dated May 17, 2024, STAMOD conceded that it had used unlicensed Cimatron Software on approximately "six to eight systems". Further, STAMOD copied Molakal and Alcor on that email, both at gmolakal@stamod.com and gm01@alcorfund.com (as well as copying others at STAMOD and Alcor), and therefore Molakal and Alcor had and continue to have full knowledge of this illegal and ongoing use. However, STAMOD falsely claimed this illegal usage was essentially a one-time occurrence due to certain testing needs.

24. By return letter dated May 26, 2024 to STAMOD, Alcor, Molakal and others, Cimatron demonstrated that this purported defense was without basis. In particular, Cimatron pointed out that the illegal usage started back in December 2023 and had been occurring ever since. Further, Cimatron pointed out that the illegal usage of cracked Software was far more prevalent than STAMOD conceded, and (at that time) was associated with not less than 17 personal computers, all associated with STAMOD employees using STAMOD email addresses and WiFi.

25. STAMOD responded by email dated June 5, 2024, again copying Molakal. In that email, STAMOD conceded that at least 12 of its "staff members" and/or "employees" had been

- 5 -

illegally using the "unauthorized system", but claimed it was for "personal gain".

26. Cimatron responded by email later that same day pointing out that the illegal use was clearly occurring on behalf of Defendants using Defendants' computers, systems and WiFi. Cimatron wrote that the "illegal usage was done on PC's associated with your company email domain and was done on your company network [and] within you[r] company premises", and, therefore, the Software was used for Defendants' commercial purposes. Cimatron demanded that STAMOD purchase proper licenses for each version of the cracked Software at fair market value as is required of all of Cimatron's licensee customers.

27. By email dated June 20, 2024, STAMOD responded that it would be discussing the matter with its "Director Mr. George [Molakal]" and would get back to Cimatron. Tellingly, STAMOD never further responded, while continuing to use the unauthorized Software into 2026.

28. Accordingly, by its undersigned counsel, Cimatron sent Defendants (addressed to Molakal) one final cease-and-desist letter dated May 1, 2026, which also demanded that Defendants provide information regarding the precise number of cracked versions downloaded so that Cimatron could determine the total amount of damages due. However, Defendants denied liability and refused to provide the requested information. Further, Defendants have continued their illegal use of the Software through at least May 20, 2026, and Cimatron believes that use is continuing. Hence, Cimatron hereby files this action seeking damages and injunctive relief, as further set forth below.

## FIRST CAUSE OF ACTION

### Federal Copyright Infringement (17 U.S.C. § 501 et seq.)
### (Against All Defendants)

29. Cimatron repeats and realleges each and every allegation set forth above as if fully set forth herein.

- 6 -

4917-1602-1423, v.1

30. The Software is an original work of Cimatron and is protectable under the copyright laws of the United States.

31. Cimatron owns all right, title and interest in and to the copyright for the Software as evidenced by the Copyright Registration annexed hereto as Exhibit A, which was published on June 29, 2023 and is effective as of June 4, 2024.

32. Defendants have illegally accessed and used at least 24 cracked versions of the Software, as evidenced by screenshots from Cimatron's Tracker tool.

33. For example, the Tracker screenshot at Exhibit C demonstrates "Unlicensed" use of the full suite of "Cimatron 2024" on Machine ID 117958263 by Alcor and STAMOD employees with email addresses such as cvishwakarma@alcorfund.com, knmurthy@alcorfund.com, spitagi@stamod.com, and support@stamod.com on at least 60 occasions from April 11, 2025 through at least February 2026.

34. Similarly, the Tracker screenshot at Exhibit D demonstrates "Unlicensed" use of the full suite of "Cimatron 2024" on Machine ID 107757516 by Alcor and STAMOD employees with email addresses such as alcor_fund@outlook.com, fpatil@stamod.com, and shonnur@stamod.com, on at least 269 occasions from December 18, 2023 through January 17, 2025.

35. Further, the Tracker screenshot at Exhibit E shows a list of approximately 20 computers using unlicensed Software, all associated STAMOD email addresses.

36. Indeed, certain of these computers also contain properly licensed versions of the limited modules of the Software referenced above, demonstrating that those computers are used by Defendants for business purposes.

37. In addition, the Tracker screenshot at Exhibit F shows that the STAMOD

- 7 -

4917-1602-1423, v.1

employees were using Alcor's WiFi to illegally use the Software.

38. Moreover, the Tracker screenshot at Exhibit G shows that Defendants' employees at STAMOD and Alcor *continued* using cracked versions of the Software even *after receiving the Cimatron's final cease-and-desist letter addressed to Molakal*, including illegal usage on May 9 and 20, 2026.

39. Molakal is directly liable for STAMOD's and Alcor's infringement because, at minimum, he is the Chief Executive Officer of Alcor (which owns STAMOD) and an Officer, Director and/or Principal of STAMOD, and had and continues to have full personal knowledge of the repeated and ongoing infringements by his companies' employees, staffers and contractors. Molakal directly participated in the infringement by, at the very least, directing or inducing it, allowing it to repeatedly continue over several years, repeatedly condoning it and making baseless excuses for the infringement, and/or by financially benefitting from it, either directly or indirectly as an officer, investor or owner in or of STAMOD and Alcor. Indeed, it is well settled that "a corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties or regardless of whether the corporate veil is pierced. *See, e.g., CNC Software, LLC v. Global Engineering Limited Liability*, 2023 WL 3409463,4 N.D. Cal. May 12, 2023) (internal quotation marks and citations omitted). "This principle applies because corporate officers individually owe a duty of care, independent of the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable risk of personal injury to third parties", which personal injury includes copyright infringement. *Id.*

40. Thus, Defendants' acts have violated and continue to violate Cimatron's exclusive rights pursuant to 17 U.S.C. § 106 *et seq.* in that, *inter alia*:

4917-1602-1423, v.1

a. Defendants accessed, distributed and/or made unauthorized use of the Software for financial gain, without the consent, authorization, license or permission of Cimatron, and without compensation to Cimatron; and

b. Defendants solicited and directed the unauthorized accessing, distribution and use of the Software, again without the consent, authorization, license or permission of Cimatron, and without compensation to Cimatron.

41. Defendants have therefore infringed and violated Cimatron's copyright in the Software and Cimatron's Copyright Registration, including at least Cimatron's exclusive rights under 17 U.S.C. § 106 *et seq.*

42. For the reasons set forth above, Defendants' infringement and violation of Cimatron's copyright has been willful, knowing and intentional. Indeed, Defendants *know* of the access and use of the cracked Software and that such use is unauthorized and illegal, but repeatedly continue their wrongful conduct up to the date of the filing of this Complaint.

43. Accordingly, Cimatron has been damaged in an amount to be determined at trial, but not less than the fair market value of Defendants' illegal use of the Software in an amount not less than $5,520,000 (*i.e.*, at least 24 cracked versions of the full suite of the Software at $230,000 each), plus punitive damages, interest, costs, and attorneys' fees to the extent allowable by law.

### SECOND CAUSE OF ACTION

**Contributory or Vicarious Copyright Infringement**
**(Against All Defendants))**

44. Cimatron repeats and realleges each and every allegation set forth above as if fully set forth herein.

45. As set forth above, Defendants had knowledge of the infringing activity, and

- 9 -

4917-1602-1423, v.1

induced, participated in, directed, controlled, aided and abetted, and/or profited from Defendants' infringement of Cimatron's Copyright in and to the Software.  Defendants each had knowledge of the illegal usage and continued their wrongful conduct for many years, through the present.

46.    Molakal is liable for contributory or vicarious copyright infringement because, at the very least, he is the Chief Executive Officer of Alcor (which owns STAMOD) and an Officer, Director and/or Principal of STAMOD.  Molakal directly participated in the infringement by, at the very least, directing or inducing it, allowing it to repeatedly continue over several years, repeatedly condoning it and making baseless excuses for the infringement, and/or by financially benefitting from it, either directly or indirectly as an officer, investor or owner in or of STAMOD and Alcor. Indeed, it is well settled that a shareholder or an officer may be vicariously liable for infringement "because he was informed on numerous occasions of the pirated [] software installed on [the defendant's] computers, but did not take any measures to prevent the infringement". *Id*. at *5.

47.    For the reasons set forth above, Defendants' conduct was and is willful, intentional, deliberate, malicious and in complete disregard for Cimatron's rights in and to its intellectual property.

48.    Accordingly, Cimatron has been damaged in an amount to be determined at trial, but not less than the fair market value of Defendants' illegal use of the Software in an amount not less than $5,520,000, plus punitive damages, interest, costs, and attorneys' fees to the extent allowable by law.

## THIRD CAUSE OF ACTION

### Breach of Contract
### (Against STAMOD)

49.    Cimatron repeats and realleges each and every allegation above as if fully set forth

- 10 -

herein.

50.     As set forth above, Cimatron and STAMOD entered into the Agreement.

51.     While, pursuant to the Agreement, STAMOD obtained a license to use certain authorized versions of the Software, that license is expressly limited to and conditioned on STAMOD's full compliance with the Agreement.  Further, the Agreement does not permit the use of pirated, cracked or otherwise unauthorized and unlicensed versions of the Software.

52.     Nevertheless, it is clear that STAMOD has knowingly acquired from illicit third-party sources and installed, accessed, copied and/or used at least 24 unlicensed and unauthorized versions of the Software, thereby breaching the Agreement.

53.     Cimatron, at all relevant times, performed all of its material obligations under the Agreement.

54.     STAMOD's and Alcor's conduct gives rise to significant damages.  For example, Section 13.2 of the Agreement expressly provides that detection of illegal copies requires (i) payment of  compensation for past unauthorized use of the Software; (ii) purchases of Software licenses for each unauthorized use; (iii) purchases of Software maintenance for each unauthorized use for at least 3 years; and (iv) payment of any reasonable anti-piracy or compliance fees.

55.     Accordingly, Cimatron has been damaged in an amount to be determined at trial, but not less than the fair market value of STAMOD's illegal use of the Software in an amount not less than $5,520,000, plus punitive damages, interest, costs, and attorneys' fees to the extent allowable by law.

### FOURTH CAUSE OF ACTION

**Tortious Interference with Contract, in the alternative**
**(Against Alcor and Molakal)**

56.     Cimatron repeats and realleges each and every allegation above as if fully set forth

- 11 -

4917-1602-1423, v.1

herein.

57.     As set forth above, Cimatron and STAMOD entered into the Agreement.

58.     Alcor and/or Molakal intentionally procured a breach of the Agreement by causing STAMOD to access and use cracked versions of the Software without STAMOD having any legal right to do so do, and without compensating Cimatron.

59.     Accordingly, Cimatron has been damaged in an amount to be determined at trial, but not less than the fair market value of STAMOD's illegal use of the Software in an amount not less than $5,520,000, plus punitive damages, interest, costs, and attorneys' fees to the extent allowable by law.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment, in the alternative
### (Against All Defendants)

60.     Cimatron repeats and realleges each and every allegation above as if fully set forth herein.

61.     Defendants' access and/or use of the Software without compensating Cimatron the fair market value of the Software in an amount not less than $5,520,000 has conferred an unearned and undeserved benefit upon Defendants, allowing Defendants to enrich themselves unjustly and at the expense of Cimatron.  It is against equity and good conscience for Defendants to retain such sums and/or benefits without compensation to Cimatron.

62.     Accordingly, as a consequence of the foregoing, Cimatron has been damaged in an amount to be determined at trial, but not less than the fair market value of Defendants' illegal use of the Software in an amount not less than $5,520,000, plus punitive damages, interest, costs, and attorneys' fees to the extent allowable by law.

## PRAYER FOR RELIEF

- 12 -

WHEREFORE, Cimatron demands judgment as follows:

(i)     Awarding Cimatron damages in an amount to be determined at trial, but not less than the fair market value of Defendants' illegal use of the Software in an amount not less than $5,520,000, plus punitive damages, interest, costs, and attorneys' fees to the extent allowable by law;

(ii)    Injunctive relief enjoining Defendants and/or their officers, directors, members, employees, agents, servants and independent contractors, and anyone aiding, abetting or acting in concert with Defendants, from further acts of infringement of Cimatron's copyrights; and

(iii)   For such other and further relief as the Court deems just and proper.

Dated:  May 28, 2026                    Respectfully submitted,


                                        /s/Gerry Silver
                                        Gerry Silver
                                        SULLIVAN & WORCESTER LLP
                                        1251 Avenue of theAmericas, 19th Floor
                                        New York, New York 10020
                                        Phone: (212) 660-3096
                                        gsilver@sullivanlaw.com

                                        *Counsel for Plaintiffs*

- 13 -

4917-1602-1423, v.1